# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

ELIEZER D. [1], ) NO. 5:14-cv-01704-KS
    Plaintiff, )
    v. ) MEMORANDUM OPINION AND ORDER
)
NANCY A. BERRYHILL, Acting )
Commissioner of Social Security, )
    Defendant. )
_____ )

## INTRODUCTION

Eliezer D. ("Plaintiff") filed a Complaint on August 19, 2014 seeking review of the denial of his applications for a period of disability and disability insurance benefits ("DIB"). (Dkt. No. 3.)[2] On October 6, 2014, the parties consented to proceed before United States Magistrate Judge Margaret A. Nagle. (Dkt. Nos. 9, 10, 11.) On August 10, 2015, this case was transferred to the calendar of the undersigned United States Magistrate Judge. (Dkt. No.

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Plaintiff apparently lodged, but did not file his Complaint on August 18, 2014, the Complaint was transferred to United States Magistrate Judge Margaret A. Nagle and filed on August 19, 2014. (CM/ECF Docket for Case No. 5:14-cv-01704.)

20.) On August 19, 2015, the parties consented to proceed before Magistrate Judge Karen L. Stevenson. (Dkt. Nos. 22, 23, 24.) On September 24, 2015, the Court issued a Memorandum Opinion and Order reversing the decision of the Commissioner, remanding the case pursuant to sentence six of 421 U.S.C. § 405(g), and entered judgment accordingly. (Dkt. Nos. 25, 26.) On January 8, 2018, the parties filed a Stipulation to Re-open Case and Continue Court Proceedings. (Dkt. No. 39.) On January 9, 2018, the Court entered an Order re-opening the case. (Dkt. No. 40.)

On October 11, 2018, the parties filed a Joint Stipulation ("Joint Stip."). (Dkt. No. 56.) Plaintiff seeks an order reversing the Commissioner's decision and ordering the payment of benefits or, in the alternative, remanding for further proceedings. (Joint Stip. at 26.) The Commissioner requests that the Administrative Law Judge's ("ALJ's") decision be affirmed. (*Id*. at 27-28.) The Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed applications for a period of disability and DIB on June 9, 2011, for a period of disability commencing on February 1, 2006, due to hypertension with heart problems, severe upper back pain, lower back pain, anxiety attacks, prostate problems, stroke, heart condition, vertigo, and a neck injury. (AR 123-24.) The claim was denied on initial determination on August 26, 2011 (AR 65-69) and on reconsideration (AR 73-78). On February 15, 2012, Plaintiff requested a hearing before an ALJ. (AR 79-80.) ALJ James P. Nguyen held a hearing on December 12, 2012, where Plaintiff, who was represented by counsel, testified along with vocational expert ("VE") Troy Scott. (AR 23-44.) On January 11, 2013, ALJ Nguyen issued an unfavorable decision. (AR 9-20.) On March 7, 2013, Plaintiff requested that the Appeals Council review ALJ Nguyen's decision. (AR 7-8.) On June 25, 2014, the Appeals Council. denied review. (AR 1-6.)

1    Plaintiff timely filed a civil action. (Dkt. No. 1.) On September 24, 2015, the
2    undersigned Magistrate Judge issued a Memorandum Opinion and Order reversing the
3    Commissioner's decision and remanded the matter for further administrative proceedings
4    pursuant to sentence six of 42 U.S.C. § 405(g). (Dkt. No. 25; *see also* AR 557-566.) The
5    Court concluded that remand was appropriate to reconcile ALJ Nguyen's unfavorable
6    decision published on January 11, 2013, with a subsequent grant of benefits to Plaintiff for a
7    period of disability commencing on January 12, 2013, one day after the published date of the
8    prior unfavorable decision. (*See* AR 561-562.) Specifically, the Court found that further
9    development of the record was necessary regarding the commencement date of Plaintiff's
10   disability and directed the ALJ to reconsider its assessment of Plaintiff's subjective
11   testimony regarding the severity of his symptoms and limitations. (AR 563-565.) The Court
12   entered judgment accordingly. (Dkt. No. 26; AR 567.)

14   On December 10, 2015, consistent with the Court's order, the Appeals Council
15   remanded the case to an ALJ for further proceedings, limited to the period prior to January
16   12, 2013. (AR 570.) The Commissioner appointed ALJ Jesse J. Pease, to preside over the
17   remand hearing. (AR 652-656.) ALJ Pease held a hearing on June 1, 2016, at which
18   Plaintiff and VE David Rinehart testified. (AR 503-525.) On July 7, 2016, ALJ Pease
19   published an unfavorable decision. (AR 572-588.) On July 15, 2016, Plaintiff filed written
20   exception to the Appeals Council, arguing that the ALJ had failed to provide legally
21   sufficient reasons for his determination that Plaintiff's "statements concerning the intensity,
22   persistence and limiting effect of [his]symptoms" were not entirely credible and that the
23   ALJ's determination that Plaintiff was not fully credible "lack[ed] the support of substantial
24   evidence." (AR 687-696.) On January 9, 2017, the Appeals Council granted Plaintiff's
25   written exception and remanded the case back to ALJ Pease. (AR 589-593.)

27   On May 3, 2017, ALJ Pease held a second hearing. (AR 497-502.) Plaintiff was
28   unable to appear at that hearing because he was suffering from stage IV kidney cancer. (AR

473, 500.) On October 3, 2107, ALJ Pease again issued an unfavorable decision. (AR 476-489.) On December 12, 2017, Plaintiff filed a written exception to the ALJ Pease's Final Decision with the Appeals Council. (AR 471-474.) On January 8, 2018, Defendant filed a timely Stipulation to Re-open Case and Continue Court Proceeding. (Dkt. No 39.) On the same date, the Court granted the stipulation to re-open this matter. (Dkt. No. 40.)

## SUMMARY OF ADMINISTRATIVE DECISION

ALJ Pease found that Plaintiff met the insured status requirements of the Social Security Act on December 31, 2015, although the adjudicated period for his decision is February 12, 2006 through January 11, 2013. (AR 482.) The ALJ further found that Plaintiff had not engaged in substantial gainful activity during that period. (*Id.*) The ALJ determined that Plaintiff had the following severe impairments: "hypertension; bilateral heel spurs; early-onset degenerative joint disease, with mild wedging, in the thoracic spine; degenerative disc disease of the lumbar spine with mild atherosclerosis but without stenosis; degenerative disc disease of the cervical spine, with spondylosis; and vertigo." (*Id.*) The ALJ found that Plaintiff's mental impairment of anxiety disorder was a medically determinable mental impairment but was not severe as to the adjudicated period. (*Id.* at 483.) The ALJ further concluded that from February 1, 2006 through January 11, 2013, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairments listed in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (AR 484.)

The ALJ determined that during the adjudicated period Plaintiff had the residual functional capacity ("RFC") to perform a range of light work and, specifically, Plaintiff was capable of the following during that period:

4

> Lifting and/or and carrying 20 pounds occasionally, 10 pounds frequently, sitting, standing and walking for 6 hours in an 8-hour workday, sitting, standing, and/or walking for 6 hours out of an eight-hour workday; frequent performance of postural activities such as climbing, balancing, stooping, kneeling, crouching, and crawling; work involving no heights, which includes no ladders, ropes or scaffolds; and work not involving hazardous machinery.

(AR 484-485.)

The ALJ found that Plaintiff was able to perform his past relevant work as a clerk general (DOT[3] 209.562-010), a light, semi-skilled (SVP[4] 3) occupation both as generally performed and as actually performed. (AR 489.) Accordingly, the ALJ concluded that Plaintiff has not been under a disability as defined in Social Security Act from February 1, 2006 through January 11, 2013. (*Id.*)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the

---

[3] "DOT" refers to the *Dictionary of Occupational Titles* (U.S. Department of Labor, 1991).
[4] "SVP" refers to Specific Vocational Preparation, as defined in Appendix C of the DOT.

ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); *Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v.* Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal citations omitted).

**DISPUTED ISSUES**

Plaintiff presents two disputed issues in challenging ALJ Pease's 2017 unfavorable decision:

(1) Whether the ALJ properly considered the opinion of treating physician Jackson Alparce, M.D.; and

6

(2) Whether the ALJ provided clear and convincing reasons for finding Plaintiff not credible.

(Joint Stip. at 6-7.)

## DISCUSSION

### I. The ALJ's Consideration of Treating Physician Alparce's Opinion

Plaintiff argues that ALJ Pease erred in considering the opinion of Plaintiff's long-time treating physician. Specifically, Plaintiff contends that ALJ Pease failed to give "specifically legitimate reasons" for giving little weight to Dr. Alparce's opinion. (Joint Stip. at 7.) Defendant argues that the ALJ's assessment of Dr. Alparce's opinion is free of legal error. (*Id.* at 13-17.)

#### A. The Treating Opinion

Physician Jackson Alparce, M.D. has treated Plaintiff for the past 20 years. (AR 473, 938.) In connection with the Appeals Council's remand order, Dr. Alparce completed a Physical Residual Functional Capacity Questionnaire dated May 5, 2016. (AR 938-940 (Ex. 12F).) Dr. Alparce listed Plaintiff's symptoms as including pain, limited range of motion in upper and lower back, fatigue, and dizziness. (AR 938.) Dr. Alparce opined that Plaintiff: could walk one block without rest or severe pain; could sit for 20 minutes and stand for 30 minutes before needing to get up; could sit and stand/walk a total of about four hours in an 8-hour working-day (with normal breaks); and would need periods of walking around during an 8-hour working day approximately every 90 minutes. (AR 938-939.) Dr. Alparce further opined that Plaintiff would: need a job that permitted shifting positions at will from sitting, standing or walking; need to take unscheduled breaks of 10-15 minutes five times per 8-hour

working day; and occasionally need a cane when standing/walking. (AR 939.) Dr. Alparce opined that Plaintiff could lift and carry 10 pounds or less frequently, 20 pounds occasionally. (*Id.*) Dr. Alparce also opined that Plaintiff could never climb ladders, rarely stoop or crouch, but could occasionally climb stairs, and twist. (*Id.*) The treating physician indicated that Plaintiff would be absent from work because of his impairments or treatment about two days per month. (AR 940.) Dr. Alparce noted that Plaintiff takes medications that can cause gastrointestinal problems and narcotics that can cause dizziness, constipation, and drowsiness. (*Id.*) Finally, Dr. Alparce wrote that Plaintiff's "pain itself can case limited activities and can affect him psychologically, causing anxiety and depression." (*Id.*)

**B. Applicable Law**

"The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec.* Admin., 807 F.3d 996, 1006 (9th Cir. 2015). In doing so, the ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *see also Marsh v. Colvin*, 792 F.3d 1170, 1172-73 (9th Cir. 2015) ("an ALJ cannot in its decision totally ignore a treating doctor and his or her notes, without even mentioning them").

The opinion of a treating source is generally entitled to greater weight than the opinion of doctors who do not treat the claimant because treating sources are "most able to provide a detailed, longitudinal picture" of a claimant's medical impairments and bring a perspective to the medical evidence that cannot be obtained from objective medical findings alone. *See Garrison*, 759 F.3d at 1012; *see also* 20 C.F.R. § 404.1527(c)(2). To reject an uncontradicted opinion of a treating physician, the ALJ must provide "clear and convincing reasons that are supported by substantial evidence." *Ghanim v. Colvin*, 763 F.3d 1154, 1160-61 (9th Cir. 2014). If, however, the treating physician's opinion is contradicted by

another medical source, the ALJ must consider the factors set out in 20 C.F.R. § 404.1520c(c) in determining how much weight to accord it. These factors include: (1) the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; (2) the "[n]ature and extent of the treatment relationship" between the patient and the treating physician; (3) the "[s]upportability" of the physician's opinion with medical evidence; (4) and the consistency of the physician's opinion with the record as a whole. The ALJ must articulate "specific and legitimate reasons that are supported by substantial evidence" to reject the contradicted opinions of a treating physician. *Ghanim*, 763 F.3d at 1161.

An ALJ may properly reject a treating physician's conclusions that do not "mesh" with the treating physician's objective data or history, *see, e.g.*, *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001), and "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) ("discrepancy" between treating physician's assessment and clinical notes is a clear and convincing reason for not relying on the doctor's opinion).

**C. Analysis - The ALJ Did Not Err in Assessing the Treating Physician, Dr. Alparce's Opinion**

Dr. Alparce's opinion as to Plaintiff's physical limitations was contradicted by other medical source opinions for the relevant period. The consultative examiner, Vincent R. Bernabe, an orthopedic surgeon, in an opinion dated November 13, 2014 opined that Plaintiff could lift or carry 50 pounds occasionally and 25 pounds frequently, sit, stand or walk for six hours out of an eight-hour workday and frequently perform postural movements. (AR 1077-1082.) During a complete orthopedic consultation, Dr. Vernabe

9

noted that Plaintiff's gat was normal and he "did not use any assistive device to ambulate." (AR 1078.) The ALJ gave "little weight" to Dr. Bernabe's opinion insofar as the ALJ determined that more restrictive limitations were warranted for Plaintiff than Dr. Bernabe indicated. (AR 488.) However, the ALJ agreed with Dr. Bernabe's opinion that Plaintiff was not entirely precluded from working. (*Id.*)

The December 4, 2014 opinion of the reviewing physician, Dr. Michelotti, indicated that Plaintiff was restricted to: "lifting and/or carrying 20 pounds occasionally and 10 pounds frequently; sitting, standing, and/or walking for six hours out of an eight-hour workday; occasional postural activities with the exception of climbing ladders, ropes or scaffolds, from which he is precluded; and avoidance of concentrated exposure to extreme cold, vibrations, and hazards." (AR 605-608.) Dr. Michelotti found Plaintiff disabled as of January 12, 2013 based on Plaintiff's change in age and worsening allegations. (AR 611.)[5] Dr. Michelotti offered no opinion as to Plaintiff's disability status for the period at issue here. Indeed, the ALJ gave little weight to Dr. Michelotti's opinion because it "dates almost two years after the end of the adjudicated period in this decision and is based on evidence after the adjudicated period." (AR 488.)

Thus, because Dr. Alparce's opinion was contradicted by the opinion of other medical sources, the ALJ was obligated to provide specific and legitimate reasons supported by substantial record evidence for not giving controlling weight to Dr. Alparce's opinion. *Ghanim*, 763 F.3d at 1160-61. The ALJ stated that he gave little weight to the Dr. Alparce's May 18, 2016 opinion because, despite Dr. Alparce's long standing treating relationship with Plaintiff, the "evidence does not support Dr. Alparce's [sic] assessment" of such restrictive limitations. (AR 488.) The ALJ then pointed to "above discussed evidence" that he

---

[5] The ALJ also considered opinions given by State agency medical consultants dated August 23, 2011 and January 4, 2012 that found there was insufficient evidence prior to the date last insured. (AR 487.) The ALJ agreed with these opinions that the record was limited, but gave them partial weight because the ALJ concluded that there was nonetheless "sufficient evidence, even if they do not support a finding of disability. (*Id.*)

determined did not support Dr. Alparce's opinion regarding Plaintiff's limitations. (*Id.*) Specifically, the "above discussed evidence" from the medical record included records of Plaintiff's hospitalizations for episodes of dizziness due to hypertension, MRI images of his lumbar spine, chest-x-rays, images of his carotid arteries, and records relating to his prescription pain medications. (*See* AR486-488.)

With respect to Plaintiff's chronic back pain, the ALJ acknowledged that the objective findings showed tenderness to palpation at the lumbosacral junction and reduced range of motion in the lumbar spine, but the ALJ noted that "remaining significant findings were generally within normal limits." (AR 488.) This assessment is supported by the record evidence. MRI images of Plaintiff spine in 2011 showed "alignment of the cervical spine is normal without fracture, subluxation, or spondylolisthesis." (AR 435.) The MRI revealed disc protrusion at C2-C3 and C3-C4, and generalized disc bulge at C5-C6 and C6-C7. (AR 436.) The impressions showed "multilevel discogenic disease" most notable in the areas of disc protrusions; cervical spondylosis, mild right and severe left C3-C4 neuroforaminal stenosis; and mild left C5-C6 and moderate C6-C7 neuroforaminal stenosis." (AR 436.) These diagnostic records confirm Plaintiff's degenerative disc disease in his neck and lower back, but the ALJ noted that despite these diagnoses the record evidence also showed Plaintiff had normal gait and nerve conduction studies showed no evidence of neuropathy or nerve entrapment in Plaintiff's upper extremities and relatively mild symptoms. (AR 487, *and see, e.g.,* R 843-845 (radial sensory studies normal), 862 (multilevel discogenic disease, but facets "unremarkable"), 865 ("mild osteoarthritis with vertebral bodies in normal alignment), 874 (minimal degenerative joint disease); 985 (head, neck, and cardiovascular exam normal); 986 (ambulates without assistance – steady); 995 (heart sounds normal, no extremity edema).)

In formulating Plaintiff's RFC, the ALJ provided a detailed review of Plaintiff's medical history. Although Plaintiff had been unable to testify at the May 3, 2017 hearing,

the ALJ stated that he "considered testimony from the prior hearing, held on June 1, 2016." (AR 485-487.) ALJ noted that for the relevant period February 1, 2006 through January 11, 2013, the positive findings in the record evidence "do not support more restrictive functional limitations than those assessed" in the RFC. (AR 486.) The ALJ noted that there was "no reliable medical source statement from any physician that endorsed the extent of Plaintiff's alleged limitations." (*Id.*) Dr. Alparce's opinions provided in the Residual Functional Capacity Questionnaire dated May 18, 2016 post-dated the adjudicated period by more than two years and made no reference to findings during any earlier period. (AR 488; 938-940.) *See also Magallanes v. Bowen*, 881 F.2d 747, 754 (9th Cir. 1989) (disability must be established by contemporaneous medical records).

The ALJ also explained that the medical records of Plaintiff's hospitalizations related to hypertension and vertigo did not support a finding of disability. (AR 486.) Plaintiff was twice hospitalized after emergency room treatment for dizziness and elevated blood pressure but the ALJ noted that "findings were generally normal to mild." (*Id.*) Substantial evidence supports this explanation. The medical records during the adjudicated period reflect a history of hypertension and episodes of dizziness that resulted in emergency room treatment and/or hospitalizations. (*See* AR 253, 257, 268, 277, 340-341, 984-986.) On December 17, 2006, Plaintiff was seen in the emergency room at San Antonio Community Hospital for complaints of weakness and dizziness, but Plaintiff denied pain and, within two hours of his arrival, he was found to have "blood pressure within normal range." (AR 997.) On April 10, 2008, Plaintiff was hospitalized for complaints of dizziness and right-side weakness and numbness that was diagnosed as a transient ischemic attack. (AR 246.) Plaintiff reported dizziness while driving and reported that he felt like his blood pressure was elevated. (AR 250.) The treatment notes show, however, that the weakness in his right arm and legs, "resolved after two hours" and his "BP [blood pressure] stabilized." (AR 253.) The ALJ noted that during this hospitalization Plaintiff's results from a carotid duplex were normal and a preliminary radiology reports "showed no evidence of acute infarct, hemorrhage, mass

effect, or fracture of the calvarium." (AR 486 (citing AR 265).) Plaintiff was discharged two days later with instructions to follow up with his primary care physician in "2-3 weeks." (AR 266.) In January 2009, Plaintiff complained that he had been experiencing shortness of breath and dizziness for four days, his blood pressure was elevated–148/110–but other objective findings were negative. (AR 339-340.) He received prescription refills but no referrals to a specialist. (AR 341.) The ALJ also pointed to results in April 2012, where Plaintiff was seen at the emergency department of Beverly Hospital where he was diagnosed with a recurring syncopal episode.[6] (AR 441.) His blood pressure was normal at 118/64 (AR 452) and CT Scan results of his brain were normal, showing no acute hemorrhage, mass effect, edema or midline shift. (AR 443, 448.) Images of his chest were also normal. (AR 449.) On April 8, 2012, Plaintiff voluntarily discharged himself from Beverly Hospital. (AR 1105.)

As to limitations related to Plaintiff's chronic back pain, the ALJ explained that the objective findings showed tenderness to palpation at the lumbosacral junction and reduced range of motion in the lumbar spine, but "remaining significant findings were generally within normal limits." (AR 488.) This assessment is also supported by the record evidence. MRI images of Plaintiff spine in 2011 showed "alignment of the cervical spine is normal without fracture, subluxation, or spondylolisthesis." (AR 435.) The MRI revealed disc protrusion at C2-C3 and C3-C4, and generalized disc bulge at C5-C6 and C6-C7. (AR 436.) The impressions showed: "multilevel discogenic disease" most notable in the areas of disc protrusions; cervical spondylosis, mild right and severe left C3-C4 neuroforaminal stenosis; and mild left C5-C6 and moderate C6-C7 neuroforaminal stenosis." (AR 436.) The ALJ explained that "related diagnostic test results" also did not support a finding of disability. (AR 486.) The ALJ pointed to the carotid ultrasound performed in February 2009 that showed only mild atherosclerosis with no stenosis in either side (AR 332) and a duplex

---

[6] "Syncopal episode" is a medical term for fainting or passing out. https://www.healthline.com/health/syncopal-episode

13

carotid arterial ultrasound performed in December 2010 that showed findings consistent with Plaintiff' history of carotid artery stenosis but no evidence of high grade stenosis or flow limiting lesion in either the left or right side carotid arterial structures (AR 285-286). Finally, the ALJ noted that a 2012 chest x-ray showed no acute disease and the heart was not enlarged. (AR 486, 464.) The ALJ determined that the evidence of high blood pressure but with no evidence of congestive heart failure, acute organ failure and the overall mild diagnostic findings did not support a finding of disability. (AR 486.)

The ALJ's determination that the objective medical evidence did not support Dr. Alparce's opinion regarding the severity of Plaintiff's limitations during the relevant period is a specific and legitimate reason for assigning "little weight" to Dr. Alparce's opinion. *See Magallanes*, 881 F.2d at 753-54. Further, when the record evidence is subject to more than one reasonable interpretation, a reviewing court must uphold the agency's decision. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended). Accordingly, this Court finds that the ALJ's consideration of Dr. Alparce's opinion is free of legal error and supported by substantial record evidence.

**II.     The ALJ's Assessment of Plaintiff's Credibility**

The ALJ determined that Plaintiff's allegations regarding the severity of his symptoms and limitations were "disproportionate to the objective evidence" for the adjudicated period. (AR 486.) Plaintiff contends that ALJ Pease failed to give clear and convincing reasons for finding Plaintiff's subjective testimony regarding the severity of his limitations not fully credible. (Joint Stip. at 18-21.) For the reasons discussed below, the Court finds no legal error in the ALJ's assessment of Plaintiff's credibility.

\\
\\
\\

### A. Applicable Law

An ALJ must make two findings before determining that a claimant's pain or symptom testimony is not credible.[7] *Treichler v. Comm'r of SSA*, 775 F.3d 1090, 1102 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036). "Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms" and those reasons must be supported by substantial evidence in the record. *Id.*; *see also Marsh v. Colvin*, 792 F.3d 1170, 1173 n.2 (9th Cir. 2015); *Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1161 (9th Cir. 2008) (court must determine "whether the ALJ's adverse credibility finding . . . is supported by substantial evidence under the clear and convincing standard").

In weighing a plaintiff's credibility, the ALJ may consider a number of factors, including: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony . . . that appears less than candid; (2) unexplained or inadequately explained

---

[7] On March 28, 2016, Social Security Ruling ("SSR") 16–3p superseded SSR 96–7p, which required the ALJ to assess the credibility of a claimant's statements. SSR 16–3p focuses on the existence of medical cause and an evaluation of "the consistency of the individual's statements about the intensity, persistence, or limiting effects of symptoms with the evidence of record without consideration of the claimant's overall 'character or truthfulness'." *See* Guide to SSA Changes in Regulations and Rulings 2016–17, June 2017. The revision is applicable to Plaintiff's application here because the ALJ's decision was issued on October 3, 2017. (AR 489.) The Ninth Circuit has acknowledged, however, that SSR16–3p is consistent with existing precedent that requires that the assessments of an individual's testimony be focused on evaluating the "intensity and persistence of symptoms" after the ALJ has found that the individual has medically determinable impairments that could reasonably be expected to produce those symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 678, n.5 (9th Cir. 2017).

failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The ALJ must also "specifically identify the testimony [from the claimant that] she or he finds not to be credible and . . . explain what evidence undermines the testimony." *Treichler*, 775 F.3d at 1102 (quoting *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)). "General findings are insufficient." *Brown-Hunter*, 806 F.3d at 493 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

### B. Analysis – The ALJ Did Not Err in Assessing Plaintiff's Credibility

The ALJ concluded that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (AR 486.) Although Plaintiff was unable to attend the hearing held on May 3, 2017 due to stage IV cancer[8] (AR 500), the ALJ indicated that he had "considered testimony from the prior hearing, held on June 1, 2016." (AR 485.)

Here, because there was no finding that Plaintiff was malingering, the ALJ was obligated to provide clear and convincing reasons for discounting Plaintiff's subjective testimony regarding the severity of his symptoms and limitations. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Leon v. Berryhill*, 880 F.3d 1041, 1046 (9th Cir. 2017) (amended). The ALJ satisfied this obligation, finding that Plaintiff's allegations were not fully credible because they were inconsistent with both the medical evidence and statements in Plaintiff's adult function report and the third-party function report provided by Plaintiff's wife.

---

[8] There is no objective evidence or reference in the medical record to Plaintiff's cancer symptoms or diagnosis for the relevant period.

16

At the 2016 hearing, Plaintiff testified that his past relevant work was assisting with clerical tasks in his family's paralegal business. (AR 509-510.) In 2006, he was working three to four hours a day for two or three days in the business and his duties involved going to the post office and the bank and changing ink cartridges on the office printers. (AR 510.) Plaintiff did not do any of the actual paralegal work in the business. (AR 512.) Plaintiff testified that during that time period he had problems with dizziness, lower back pain, and upper back pain. (AR 512.) Between 2006 and 2013 he stated that he did drive, mostly with someone else, but he could sometimes drive himself to the post office – a distance of about two blocks. (AR 513.) He stated that he could not do more work during that period of time because of his problems with dizziness and pain, which, he said, "gets me to a point that I cannot concentrate. It gets me irritated and to the point that I cannot function." (AR 513-514.) He testified that his primary problematic areas during this period of time were upper back pain and neck stiffness and that he would get anxiety attacks "maybe caused by the pain." (AR 515.)

The ALJ found that Plaintiff's testimony was inconsistent with the objective medical evidence, the ALJ noted that "the positive findings during this adjudicated period do not support more restrictive functional limitations than those assessed [in the RFC]." (AR 486.) "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of [Plaintiff's] pain and its disabling effects." *Rollins v. Massonari*, 261 F.3d 853, 856-57 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)).)

Here, the ALJ noted the medical evidence related to Plaintiff's hypertension and vertigo did not support Plaintiff's allegations or a finding of disability. (*Id.*) As discussed in detail above, despite Plaintiff's two hospitalizations for symptoms of dizziness and syncope, the results of testing were within the normal to mild range and his blood pressure returned to normal ranges. Although Plaintiff complained of right side weakness and numbness, the

preliminary radiology report showed no evidence of infarct, hemorrhage, mass effect or fracture of the calvarium. The ALJ pointed to carotid artery images done in 2009 and 2010, that showed mild atherosclerotic disease, but no evidence of high grade stenosis or congestive heart failure. Further, the ALJ noted that the results of CT scans done in April 2012 were normal. (AR 486.) The ALJ also explained that the objective findings relating to Plaintiff's heel spurs, early onset degenerative joint disease, with mild wedging, in the thoracic spine, degenerative disc disease of the lumbar spine, with mild atherosclerosis and degenerative disc disease of the cervical spine with spondylosis also did not support Plaintiff's subjective allegations. (AR 487.) The ALJ acknowledged that MRI results of Plaintiff's thoracic spine done in February 2012, indicated early onset degenerative joint disease, in the thoracic spine and x-rays of the lumbar spine taken in July 2014 indicate mild osteoarthritis, these findings warranted physical limitations as outlined in the RFC, but did not preclude Plaintiff from all work. (AR 487.)

In addition, the ALJ explained that he had considered the statements in Plaintiff's function report and by his wife in a third-party function report and found the statements were not consistent with the severity of limitations that Plaintiff alleged. (AR 485.) In his function report, Plaintiff indicated that his activities of daily living included the ability to perform personal hygiene, he makes coffee and a light breakfast, watches the news, make breakfast, watered plants and grass, sometimes buys groceries, shopping, and sometimes drives his "wife to the doctor, therapy, pick up medi[ci]nes." (AR 161.) Plaintiff indicated he had no problem with personal care, can prepare simple meals, and goes to the park once a week to see his grandson play baseball. (AR 162-65.) Plaintiff's wife completed an Adult Third Party Function Report, in which she reported that: due to "extreme pain in upper back and neck" Plaintiff could not do house or yard work; and Plaintiff has difficulty walking, lifting, squatting, reaching, kneeling, climbing stairs and using his hands. (AR 182-187.) The ALJ found that Plaintiff's activities of daily living and as well as his wife's statements about his limitations were not consistent with Plaintiff's allegations of total disability,

particularly in light of the medical records. (AR 485-86.) After a thorough review of the record, which after remand now spans more than 900 pages, the Court finds no legal error in the ALJ's credibility assessment.

The ALJ stated clear and convincing reasons supported by substantial evidence in the record for finding Plaintiff less than fully credible as to the severity of his alleged limitations. Accordingly, the Court finds the ALJ did not err in discounting Plaintiff's credibility with respect to the adjudicated period.

## CONCLUSION

For the reasons stated above, IT IS ORDERED that the decision of the Commissioner is AFFIRMED.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and counsel for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: January 17, 2019

_____
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE